IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

DOUGLAS JUNCO,

    Plaintiff,

v.

OFFICER CARVER,

    Defendant.

CIVIL ACTION NO.: 5:23-cv-27

**O R D E R**

Defendant filed a Motion to Dismiss. Doc. 35. Plaintiff filed a Response in opposition. Doc. 38. For the following reasons, I **GRANT** Defendant's Motions to Dismiss, **DISMISS without prejudice** Plaintiff's Complaint for failure to exhaust available administrative remedies, and **DIRECT** the Clerk of Court enter the appropriate judgment of dismissal and **CLOSE** this case. I further **DENY** Plaintiff leave to appeal *in forma pauperis*.

**BACKGROUND**

Plaintiff filed his Complaint on April 3, 2023, alleging Eighth Amendment claims under 42 U.S.C. § 1983. Plaintiff contends Defendant "dragged" him "from intake," with his hands cuffed behind his back, "banged [him] into everything on the way," stripped him naked, and forced him into a cold shower.[1] Doc. 1. The Court conducted a frivolity screening under 28 U.S.C. § 1915A and dismissed Plaintiff's claims against Ware State Prison and the Georgia

---

[1] Plaintiff initially filed this Complaint in the Northern District of Georgia, but, as the alleged incident occurred at Ware State Prison in Waycross, Georgia, the case was transferred to this District on April 10, 2023. Doc. 2.

Department of Corrections, as well as Plaintiff's retaliation claims.  Doc. 28.  The Court directed service of Plaintiff's Eighth Amendment claim against Defendant Carver.  Doc. 29.

Defendant Carver filed a Motion to Dismiss on July 25, 2024.  Doc. 35.  Defendant argues Plaintiff failed to exhaust administrative remedies.  Doc. 35-1.  Plaintiff filed a Response to Defendant's Motion to Dismiss, claiming he did exhaust remedies as far as it was possible to do so.  Doc. 38.

## DISCUSSION

Defendant argues Plaintiff's Complaint should be dismissed because Plaintiff did not exhaust his administrative remedies prior to filing his Complaint.  Doc. 35-1.  Plaintiff responds he filed a grievance, and the only reason he did not appeal that grievance was because it was referred to the Criminal Investigations Division and, therefore, was not appealable.  Doc. 38 at 3–4.

I.   **Prison Litigation Reform Act's Exhaustion Requirements**

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—including the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions.  42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000).  The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how

2

special the circumstances.  Ross v. Blake, 578 U.S. 632, 639–40 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate.  Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement).  Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim.  Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules.  Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))).  "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit."  Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)).  An incarcerated individual cannot "cure" an exhaustion

defect by properly exhausting all remedies after filing suit.  Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process.  Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

## II.     Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209.  When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies."  Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015); Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for suing, one exception exists.  Ross, 578 U.S. at 642 ("The PLRA contains its own, textual exception to mandatory exhaustion.").  "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies."  Id. at 1856; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017).  Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to exhaust

. . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'"  Ross, 578 U.S. at 642; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")).  "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available."  Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."  Ross, 578 U.S. at 642.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones").  Second, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it."  Ross, 578 U.S. at 642.  Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust.  Id. at 1860; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding

exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a).  541 F.3d at 1082.  First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true."  Id.; see also Bracero v. Sec'y, Fla. Dep't of Corr., No 17-14278, 2018 WL 3861351, at *1 (11th Cir. 2018).  This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust.  Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824.  "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust."  Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion."  Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion.").  After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust."  Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209).  Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings."  Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of

Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

### III. Applying Turner

#### A. The Georgia Department of Corrections' ("GDC") Administrative Remedies

Ware State Prison, where Plaintiff's claims arose, utilizes the GDC procedures for prisoner grievances. Doc. 35-2 at 1–2. The GDC's grievance policies are set out in Standard Operating Procedure ("SOP") 227.02. Id. Under SOP 227.02, the Grievance SOP applies to "any condition, policy, procedure, or action or lack thereof that personally affects the Offender," excluding certain designated "Non-Grievable Issues." Doc. 35-3 at 4.

The grievance procedure consists of two steps, the original grievance and the Central Office Appeal. Id. at 8. Under Step 1, the inmate must submit a completed Grievance Form within 10 calendar days of "the date the inmate knew, or should have known, of the facts giving rise to the grievance." Id. Then, the inmate may appeal the decision to the GDC Central Office under three circumstances: (1) after the inmate receives the Warden's rejection of the grievance; (2) after the inmate receives the Warden's decision on the grievance; or (3) after the time allotted for the Warden to decide has expired. Id. at 14. The SOP provides a 40-day period for the Warden's response to be given to the inmate, with the possibility for a 10-day extension. Id. at 11. An appeal must be filed within seven days of an inmate receiving the Warden's response. Id. at 14.

If the grievance alleges physical force, the SOP mandates the grievance be forwarded to the Criminal Investigation Division. Id. at 12. This process "effectively closes the grievance"

and "is not appealable." In addition, the inmate "shall receive a response upon the completion of the investigation conducted by the Criminal Investigation Division." Id. at 12–13.

### B. Plaintiff Did Not Exhaust Available Administrative Remedies

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take the plaintiff's version of the facts as true." Turner, 541 F.3d at 1080–82.

Defendant alleges Plaintiff's Complaint should be dismissed because he did not exhaust available administrative remedies as to the claims raised in this case. Doc. 35-1 at 5. Defendant notes that Plaintiff filed Grievance Number 350648 but also points out "Grievance Number 350648 was (1) rejected by the Warden's office and (2) referred to the Criminal Investigations Division on May 30, 2023, which is after Junco filed his Complaint." Id.

Plaintiff, in his Response, characterizes Defendant's Motion as seeking dismissal because he failed to appeal his grievance. Plaintiff asserts that he only failed to appeal because he "was told by different counselors" his grievance was referred to the Criminal Investigations Division and was not appealable. Id. at 3. Plaintiff also notes Defendant's filings explicitly state the grievance was not appealable. Id.

Plaintiff's allegations and Defendant's factual allegations do not conflict. Defendant asserts that Plaintiff filed suit too early, i.e., before he received a response to his grievance. Plaintiff, on the other hand, makes an argument as to why he did not appeal. Plaintiff's allegations, even taken as true, cannot survive a motion to dismiss for failure to exhaust his administrative remedies under the first prong of the Turner test. The SOP establishes the grievance screening and processing procedure, requiring the Grievance Coordinator to accept the grievance or recommend rejection to the Warden, who will decide whether to reject the

grievance, and then have the Grievance Coordinator communicate that decision to the inmate. Doc. 35-3 at 9–10. Here, Plaintiff filed his grievance on March 19, 2023, and then initiated this suit on April 3, 2023. Doc. 35-4 at 1. However, Plaintiff's grievance was not rejected until May 30, 2023, and Plaintiff was not notified of the decision to reject the grievance and forward the allegations to the Criminal Investigations Division until June 5, 2023. Doc. 35-4 at 2. Plaintiff filed suit barely two weeks after filing his grievance, long before his grievance was rejected.

Plaintiff is correct about the fact he need not appeal the denial, but that fact is not what matters here. The problem for Plaintiff is that he did not allow the SOP procedure to be completed before he filed suit. "[U]nless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred." Johnson, 418 F.3d at 1157–58 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1023 (7th Cir. 2002)). Allowing an inmate-plaintiff to disregard that process "would allow a prisoner to 'exhaust' state remedies by spurning them, which would defeat the statutory objective of requiring the prisoner to give the prison administration an opportunity to fix the problem." Id. (quoting Pozo, 286 F.3d at 1023–24). Because Plaintiff did not allow the process outlined in the SOP to conclude before he filed suit, he did not exhaust his administrative remedies, as required by law.[2]

Defendant has carried his burden of showing Plaintiff did not exhaust his available administrative remedies. Accordingly, I **GRANT** Defendant's Motion to Dismiss and **DISMISS** Plaintiff's claims against Defendant.

---

[2] Plaintiff filed an Amended Complaint on January 23, 2024. Doc. 25. But "[t]he only facts pertinent to determining whether a prisoner has satisfied the Prison Litigation Reform Act's exhaustion requirement are those that existed when he filed his original complaint." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012). Therefore, amending the Complaint after the grievance process has run cannot, in itself, change the fatal fact that administrative remedies remained unexhausted when Plaintiff filed suit.

IV.     **Leave to Appeal** *in Forma Pauperis*

The Court also denies Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is appropriate to address that issue in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, I **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the foregoing reasons, I **GRANT** Defendant's Motions to Dismiss, **DISMISS without prejudice** Plaintiff's Complaint for failure to exhaust available administrative remedies,

and **DIRECT** the Clerk of Court enter the appropriate judgment of dismissal and **CLOSE** this case.  I further **DENY** Plaintiff leave to appeal *in forma pauperis*.

  **SO ORDERED**, this 12th day of November, 2024.

                       _____
                       BENJAMIN W. CHEESBRO
                       UNITED STATES MAGISTRATE JUDGE
                       SOUTHERN DISTRICT OF GEORGIA