**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**WAYCROSS DIVISION**

DOUGLAS JUNCO,

      Plaintiff,

      v.

OFFICER CARVER,

      Defendant.

CIVIL ACTION NO.: 5:23-cv-27

**O R D E R**

Plaintiff Douglas Junco filed a Motion for Reconsideration.[1]  Doc. 45.  Plaintiff asks the

Court to reconsider its November 12, 2024 Order dismissing his Complaint without prejudice.

See Doc. 42.  For the following reasons, I **GRANT** Plaintiff's Motion for Reconsideration and

**VACATE** the November 12, 2024 Order and judgment closing this case.  Docs. 42, 43.  I further

**DIRECT** the Clerk of Court to re-open this case.  Defendant's motion to dismiss remains

pending.  Doc. 35.  If Defendant wishes to provide additional briefing in support of the motion to

dismiss, he must do so **within 14 days of the date of this Order**.

**BACKGROUND**

Plaintiff filed a pro se Complaint on April 3, 2023.  Doc. 1.  Plaintiff then filed an

Amended Complaint on January 23, 2024.  Doc. 25.  I allowed Plaintiff's claims against

Defendant Carver to proceed after screening the Complaint under 28 U.S.C. § 1915A.  Doc. 29.

Defendant filed a motion to dismiss on July 25, 2024.  Doc. 35.  Plaintiff filed a response

on August 8, 2024.  Doc. 38.  I granted the motion to dismiss, concluding Plaintiff had failed to

---

[1]     I **DIRECT** the Clerk of Court to amend the docket and record of this case to reflect that
Plaintiff's submission at Document Number 45 is a Motion for Reconsideration.

exhaust administrative remedies prior to filing his initial Complaint, as 42 U.S.C. § 1997e(c)(1) requires.  Doc. 42.  Specifically, I found that Plaintiff failed to complete the Georgia Department of Corrections grievance procedure before he filed suit.  Id. at 8–9.

In the instant Motion, Plaintiff asks the Court to reconsider its Order granting Defendant's motion to dismiss.  Plaintiff contends that a counselor at the institution where he is housed told him that his grievance had been referred to the Criminal Investigations Division ("CID").  Doc. 45 at 2.  Plaintiff contends referral to the Criminal Investigations Division was actually "a way for them to dead your grievance and they don't ever do anything."  Id.  Plaintiff states that he asked the counselor if he should appeal, to which the counselor replied that the grievance was not appealable.  Id. at 3.  Plaintiff explains further that two other counselors told him that his grievance was a "waste of time" and "dead and not appealable."  Id.  Plaintiff states that he asked two counselors to check the status of his grievance on the computer and the counselors told him the grievance was "closed."  Id.  Plaintiff also states he did not wait for a formal response to his grievance because he was not informed that he should expect one.  Id. at 4.  Plaintiff explains he has filed multiple grievances while incarcerated, all have been denied, and those denials are often late by several months' time.  Id. at 7–8.

**LEGAL STANDARD**

A motion for reconsideration, or a Federal Rule of Civil Procedure 59(e) motion, is "an extraordinary remedy, to be employed sparingly."  Smith ex rel. Smith v. Augusta-Richmond County, No. CV 110-126, 2012 WL 1355575, at *1 (S.D. Ga. Apr. 18, 2012) (internal citation omitted).  "A movant must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision."  Id. (internal citation omitted).  "The only grounds for granting a Rule 59 motion are newly[]discovered evidence or manifest errors of law or fact."

2

Jacobs v. Tempur-Pedic Intern., Inc., 626 F.3d 1327, 1344 (11th Cir. 2010) (quoting In re

Kellogg, 197 F.3d 1116, 1119 (11th Cir. 1999) (internal punctuation omitted)).  "A Rule 59(e)

motion cannot be used to relitigate old matters, raise argument[,] or present evidence that could

have been raised prior to the entry of judgment."  Id. (quoting Michael Linet, Inc. v. Village of

Wellington, 408 F.3d 757, 763 (11th Cir. 2005) (alterations omitted)).

### DISCUSSION

As an initial matter, I address the Court's jurisdiction to consider this Motion.  Plaintiff

filed the Motion on December 3, 2024.  He then filed a notice of appeal on December 9, 2024.

Doc. 46.  Ordinarily, a notice of appeal "divests the district court of jurisdiction over a case."

Weaver v. Fla. Power & Light, 172 F.3d 771, 773 (11th Cir. 1999).  Federal Rule of Appellate

Procedure 4 provides an exception, however.  "If a party files a notice of appeal after the court

announces or enters a judgment," but before the court rules on a Federal Rule of Civil Procedure

59 motion, "the notice becomes effective to appeal a judgment or order, in whole or in part,

when the order disposing of the last such remaining motion is entered."  Fed. R. App. P.

4(a)(4)(B)(i).  In other words, the district court may rule on a pending Rule 59 motion even if a

party later files a notice of appeal.  Plaintiff filed the instant Motion after the entry of judgment

but before he filed his notice of appeal.  This Court, therefore, retains jurisdiction to rule on

Plaintiff's Motion.

In support of his Motion to Reconsider, Plaintiff makes three arguments, each related to

availability of administrative remedies.  First, Plaintiff argues he was never told he should wait

for a response to his grievance.  Doc. 45 at 4.  Second, Plaintiff claims the grievance procedure

"operates as a simple dead end."  Id. at 6.  Finally, Plaintiff states that a counselor told him a CID

referral is "a waste of time" and a "way to dead your grievance."  Doc. 45 at 2.  The counselor

told him the grievance was "not appealable."  Plaintiff states he asked two other counselors to

check the status of his grievance and the counselors told him that the grievance was "closed."  Id.

at 3.  Plaintiff argues that it was only after these counselors' representations that he filed suit.  Id.

at 3.

Plaintiff's arguments align with recognized circumstances in which administrative

remedies are not capable of use and, therefore, exhaustion is not required.  Ross v. Blake, 578

U.S. 632 (2016).  First, an administrative procedure is unavailable "when (despite what

regulations or guidance materials may promise) it operates as a simple dead end—with officers

unable or consistently unwilling to provide any relief to aggrieved inmates."  Id. at 642.  Next,

exhaustion is not required when an administrative procedure is "so opaque" or "unknowable"

that "no ordinary prisoner can discern or navigate it."  Id.  Third, an inmate is not required to

exhaust "when prison administrators thwart inmates from taking advantage of a grievance

process through machination, misrepresentation, or intimidation."  Id. at 644.

Plaintiff's first two arguments appear to be efforts to raise new arguments and present

evidence that he could have presented prior to entry of judgment in this case.  In those

arguments, Plaintiff does not identify new evidence or manifest errors of law or fact.  Plaintiff's

third argument, that he only initiated suit after prison administrators represented to him that his

grievance was "dead" and "not appealable," presents a different issue, however.  By explaining

these representations, Plaintiff has demonstrated facts of a strongly convincing nature.  Those

facts demonstrate that administrative remedies were not available.

## I.    Plaintiff's Knowledge of Administrative Remedies

Plaintiff argues he was never told to wait for a response to his grievance, stating "no one mentioned anything at all about a response." Doc. 45 at 4.  This contention does not warrant reconsideration.

The process for filing grievances, the timeline for responses, and steps to be taken after a given response are all detailed in the Grievance Standard Operating Procedure (the "SOP"), however.  See Doc. 35-3 (detailing the SOP).  The SOP, at § IV(C)(1)(e)(iii), explicitly states that rejected grievances are returned to the inmate along with the Warden/Superintendent's decision.  Id. at 9–10.  The Warden/Superintendent has 40 days to respond to a grievance, with the possibility of a 10-day extension, per SOP § IV(C)(1)(f)(v).  Id. at 11.  Under § IV(C)(1)(g)(i), grievances with allegations of physical force that are rejected are referred to the CID, and the inmate is notified upon completion of the investigation.  Id. at 12.

Plaintiff filed his Complaint on April 3, 2023, 15 days after he filed the grievance.  Because Plaintiff's grievance involved allegations of physical force, it was referred to the CID on May 30, 2023.  Doc. 35-4 at 2.  Plaintiff was notified of the referral on June 5, 2023.  Id.  Plaintiff, therefore, filed the Complaint before his grievance had been properly reviewed, before he was notified of the result, and before 40 days had run for a response from the Warden/Superintendent.  Doc. 35-4 at 2.  Plaintiff does not contend he was not provided access to the SOP or that it omitted any necessary information.  He also does not contend the SOP is so opaque as to make adherence to it impossible.  Plaintiff's argument that he was unaware of the need to wait does not provide grounds for reconsideration.  Thus, Plaintiff's first contention does not present manifest errors of law or fact and does not raise any issue that could not have been raised prior to dismissal.

## II.    The Grievance Procedure as a Dead End

Plaintiff next appears to argue that adherence to the SOP would be a "simple dead end," stating that he has filed several grievances in the past, which were all denied. Doc. 45 at 7. Plaintiff argues that "nobody wins grievances or appeals in GDC" and that responses to grievances are consistently late. Id. at 8.

The simple fact that Plaintiff's past grievances have been rejected does not show that officers are unable or unwilling to provide any relief to any aggrieved inmate. Ross discusses the example of a prison handbook that "directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions." 578 U.S. at 643. There, the Supreme Court concluded there must at least be some possibility of relief, and "[w]hen the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy." Id.

Plaintiff has not demonstrated that the grievance procedure is a dead end. Plaintiff merely contends that his past grievances have all been rejected in an untimely manner and that other inmates' grievances are often rejected. Even if true, that fact does not mean there is no possibility of relief through the administrative remedies procedure. Additionally, Plaintiff presents no evidence that prison administrators refused to consider his grievance, rejected it out of hand, or did not possess any authority to act on it. A rejection alone does not mean a dead end. These contentions do not show a manifest error of law or fact and do not raise any issues Plaintiff could not have raised prior to dismissal.

## III.    Prison Administrators' Misrepresentations

Plaintiff's final argument is that prison administrators represented to him that his grievance was closed and unappealable. Here, Plaintiff demonstrates that he likely was not

6

required to exhaust administrative remedies because prison officials thwarted him from "taking advantage of a grievance process through . . . misrepresentation . . . ."

Plaintiff stated in his response to Defendant's motion to dismiss that "the reason I didn't file an appeal . . . was because I was told by different counselors that the grievance I filed against unit manager Carver's acts on 3-16-23 was being referred to criminal investigations division and was not appealable." Doc. 38 at 2–3. Plaintiff added more detail in his Motion to Reconsider. Doc. 45 at 2. Specifically, Plaintiff explains that counselors told him the grievance was "closed" and that there no further steps for Plaintiff to take with his grievance. In the Motion, Plaintiff states that he asked a counselor what he should do once the grievance was referred to CID and the counselor said the grievance was not appealable. Then two other counselors reiterated that the grievance was "dead." Id. at 3. Plaintiff sought further guidance from mental health counselors, who, at Plaintiff's request, checked the status of his grievance on "the computer." The counselors then told Plaintiff that the grievance was closed. Plaintiff states in conclusion "that was when I wrote the Judge stating my lawsuit." Id.

Taking these allegations together, Plaintiff sufficiently alleges that prison administrators made misrepresentations to him about the status of his grievance—namely, by telling Plaintiff that his grievance was closed and that he could not appeal further. Acting on those misrepresentations, Plaintiff proceeded with this suit. Because Ross provides that administrative remedies are unavailable if prison administrators' misrepresentations thwart an inmate's ability to exhaust administrative remedies, the facts presently before the Court demonstrate that Plaintiff was likely not required to exhaust. See Ross, 578 U.S. at 644 n.3 ("Grievance procedures are unavailable . . . if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process" (quoting Davis v.

Hernandez, 798 F.3d 290, 295 (5th Cir. 2015))); see, e.g., Terrell v. Davis, Civ. Action No. 5:17-CV-441, 2018 WL 4502329, at *2 (M.D. Ga. Sept. 20, 2018) (finding that administrative remedies were not available when prison officials told plaintiff an incident was non-grievable, even though the SOP stated that it was).  Therefore, I **GRANT** Plaintiff's Motion for Reconsideration.

## CONCLUSION

For the foregoing reasons, I **GRANT** Plaintiff's Motion for Reconsideration and **VACATE** the November 12, 2024 Order and judgment closing this case. Docs. 42, 43.  I further **DIRECT** the Clerk of Court to re-open this case.  Defendant's motion to dismiss remains pending.  Doc. 35.  If Defendant wishes to provide additional briefing in support of the motion to dismiss, he must do so **within 14 days of the date of this Order**.

**SO ORDERED**, this 7th day of March, 2025.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA